**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEANNE MATTHEWS,<br>individually and on behalf of<br>all others similarly situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 22-cv-649 |
| v. | ) <br> ) | Hon. Steven C. Seeger |
| POLAR CORP., | ) <br> ) | |
| Defendant. | ) <br> ) | |

_____)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jeanne Matthews went to the grocery store and bought a 12-pack of lemon seltzer water, sold by Defendant Polar Corp. Anyone who glanced at the box had no doubt what thirst-quenching flavor was on tap inside. The packaging said "LEMON," and images of lemon slices floated nearby in a tranquil sea of blue bubbly water, like citrus islands. For good measure, the box had plenty of yellow, signaling lemony flavor waiting to burst out of the cans.

The case of bubble water sounds like a refreshing way to spend an afternoon with friends. But Matthews apparently was none too pleased to discover that the 12-pack of carbonated water contained a 12-pack of carbonated water. She apparently wanted the cans of water to contain a bunch of juice. Not just a little juice – a big squeeze of lemon juice, right in each can.

She was so troubled with the cans that she marched to the federal courthouse. She believes that the packaging is misleading because it uses the word "lemon." The theory _isn't_ that the can says "lemon," but there is no lemon. The cans apparently do, in fact, contain a little lemon. Instead, the theory is that Matthews thought that there would be _more_ lemon. So she makes a big fuss about a little lemon.

The complaint fizzles, and has no juice. For the reasons stated below, the motion to dismiss is granted.

## Background

At the motion-to-dismiss stage, the Court must accept as true the complaint's well-pleaded allegations. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

The case is about a case of lemon-flavored seltzer water. Defendant Polar "manufactures, labels, markets, and sells carbonated water." *See* Cplt., at ¶ 1 (Dckt. No. 1). Specifically, it makes and sells a lemon carbonated water (or seltzer water, or bubble water, depending on where you live). *Id.*

Carbonated water has bubbled up as a leading drink in recent years. In the last five years, "carbonated water sales have increased over 40 percent, with Americans consuming 170 million gallons each year." *Id.* at ¶ 3. Sales have increased as consumers have cut back on drinking soft drinks and juices "due to growing awareness of the adverse health effects of these sugary beverages." *Id.* at ¶ 4.

But consumers still want flavor. So, some consumers purchase carbonated water "with small amounts of added fruit ingredients, which is less 'plain' than water, but avoids the added sugars and calories in soda and juice." *Id.* at ¶ 5.

Polar is a surging player in the carbonated-water market. In fact, it "is the fastest growing brand of carbonated water in the nation." *Id.* at ¶ 47.

2

Plaintiff Jeanne Matthews bought Polar's lemon seltzer water on more than one occasion between July and September 2021. *Id.* at ¶ 54. She purchased the seltzer water from her local grocery store in Evanston, Illinois. *Id.* She paid at least $1.89 per 12-ounce can, excluding sales tax, which leads one to wonder if she ever shops around. *See id.* at ¶¶ 37, 64.

The packaging on the 12-pack of seltzer water isn't lacking in lemon imagery. There isn't a lot of room for a consumer to wonder what flavor awaits inside:



*Id.* at ¶ 7.

As the reader can see, the packaging advertises the product as lemon seltzer water. The word "lemon" appears prominently. For good measure, the packaging highlights the word in a rectangle of yellow, to underscore the fruity flavor. It's not just "lemon." It's "**LEMON**."

The labeling makes the same point with pictures of lemon wedges. The packaging includes multiple lemon wedges immersed in a light blue background with bubbles. *Id.* at ¶ 7. The lemon wedges appear to be playfully suspended in bubbling seltzer.

A consumer who buys the case and opens the package will get greeted by – you guessed it – 12 cans of lemon-flavored seltzer water. Each can of water delivers the same message and sends the same signals:



*Id.* at ¶ 17; *see also id.* at ¶¶ 6–7.

The word "lemon" appears prominently at the bottom of the can. An inviting slice of lemon appears nearby, awaiting a glass. Loads of bubbles surround the slice of citrus. The top and bottom of the can are yellow, too. From beginning to end, the can practically screams citrusy goodness.

The packaging and the can highlight the product's natural taste. "Refreshingly Natural" appears in the lower left of the case's packaging, and at the top of the can. *See id.* at ¶¶ 7, 17.

"Natural" makes an appearance in the description of the seltzer's ingredients, too. On the can, the phrase "MADE WITH NATURAL FLAVORS" appears to the lower right of the word "POLAR." *Id.* at ¶ 17. The phrase is a bit hard to see on the picture of the can included in the complaint, but the complaint also included a blown-up photo of the phrase. *Id.* Both the can's label and the case's packaging describe the product as "100% NATURAL SELTZER." *Id.* at ¶¶ 7, 17. And below that phrase, the box and the can say "CALORIE-FREE." *Id.*

4

The back of the can includes more information in the "Nutrition Facts." The complaint itself quotes only part of the can. Even so, Polar's motion to dismiss includes a full image of the can's labeling, as if the can was flattened and straightened.[1] It looks like this:



*See* Crowley Aff., Ex. 1 (Dckt. No. 17-2, at 5 of 5).

The nutrition facts appear on the right-hand side of the label. Below the nutrition facts, it reads: "CONTAINS CARBONATED WATER. NATURAL FLAVORS." *Id.* Above the

---

[1] Though this image of the product's label was not in the complaint, the Court may still consider it (but the ruling doesn't depend on it). In considering a motion to dismiss, a court may consider "documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment."). And even where a document is not incorporated by reference, a court may consider it on a motion to dismiss if it is integral to the complaint. *See Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022). A court can consider the whole can, just like a court could consider a whole document. Even so, when it comes to consumer packaging, the Seventh Circuit has held that the front and the back of consumer packaging are not created equal. A seller cannot dupe a consumer with the labels on the front of the packaging, only to take it away with disclaimers on the back of the packaging. *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476–77 (7th Cir. 2020). Hooking the consumer with a misrepresentation is enough, even if something on the back of the can could extract the hook from a reasonable consumer. *Id.* at 477 ("[T]he reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label."). The Court is simply flagging other content, for sake of completeness.

nutrition facts, the label states that the product "CONTAINS NO JUICE." *Id.* It's not easy to see (look in the top right), because it is light-colored text immersed in a sea of yellow, but it's there.

Somewhere along the line, Matthews became dissatisfied with her purchase of lemon-flavored bubble water. The complaint doesn't reveal the backstory. Maybe she was dissatisfied at some point after taking a big swig. But then again, she couldn't have been *that* dissatisfied, because she kept buying the stuff.

Anyway, Matthews was non-plussed with the cans of carbonated water. But she didn't go back to the grocery store and demand her money back. And she didn't contact the manufacturer, either. Instead, she decided to go to federal court, claiming that she was duped.

The theory of the complaint has a few layers. Matthews basically alleges that the "lemon" label is misleading because the product "lacks the *amount* and *type* of lemon ingredients expected by Plaintiff and consumers." *See* Cplt., at ¶ 2 (Dckt. No. 1) (emphasis added).

The first theory is about the amount of lemon. Matthews contends that the product's labeling "purport[s] to contain an appreciable amount of lemon ingredients." *Id.* She alleges that, based on the labeling, she expected the seltzer to have *more* lemon than it actually does. She thought that she was getting a can of seltzer with a more-than-*de-minimis* amount of lemon ingredients.

The problem is not that Polar is selling cans of lemon-free lemon seltzer water. In fact, Matthews admits that the seltzer does, in fact, contain lemon ingredients. *See id.* at ¶¶ 55, 59 (acknowledging that the seltzer has "a de minimis or negligible amount" of "lemon ingredients"); *id.* at ¶ 61 (acknowledging that the seltzer "contained a negligible amount of

lemon"); *see also id.* at ¶¶ 13, 14, 63, 82. Instead, Matthews sees a problem because the cans contain less lemon than she expected.

Matthews alleges that consumers expect more lemon than they're getting. "Consumers expect the Product has a non-de minimis amount of lemon ingredients, based on the picture of the lemon wedge and the prominent statement, 'LEMON.'" *Id.* at ¶ 11. In her view, the quantity of lemon in the seltzer water is "not equivalent in any way to the lemon wedge prominently depicted on the front of the case or Product label." *Id.* at ¶ 60.

Matthews stretches to find meaning in other words to support her big-squeeze-of-lemon theory. She thinks that "natural" includes some kind of guarantee that each can of water contains a certain amount of lemon. She contends that "[t]he 'Refreshingly Natural' statement furthers" the "impression" that the seltzer contains more than a *de minimis* amount of lemon "because lemons are a natural product that can be added in its natural form, through being expressed and squeezed." *Id.* at ¶ 12.

Overall, Matthews claims that "[t]he packaging and labeling are misleading because it gives consumers the impression the Product contains a greater amount of lemon ingredients than it does." *Id.* at ¶ 13. Instead, "[t]he Product does not contain an appreciable amount of lemon, as consumers understand this citrus fruit." *Id.* at ¶ 14.

The second theory is about the "type" of lemon flavor. *Id.* at ¶ 2. This theory is a little wonky. Matthews doesn't allege that the seltzer water had chunks of lemon rind floating in it, or anything of that sort. And she doesn't allege that the can is a cocktail of artificial ingredients. Instead, she seems to take issue with what Polar *did* with the lemons, and how Polar created that lemony flavor.

Basically, Polar used oils, extractives, and essences of lemons, and then put them through a manufacturing process. "The extractives, oils, and essences from lemons are concentrated, compounded, synthesized, and mixed with solvents and additives, to create lemon flavor, which lacks the nutritive value of lemons." *Id.* at ¶ 10.

So, the lemon flavor comes from . . . lemons. Notice that phrase – "from lemons." *Id.* The company takes fruit "*from lemons*" and uses it to – brace yourself – "create lemon flavor." *Id.* (emphasis added). The complaint alleges that the seltzer's flavor comes from "isolated *lemon* compounds." *Id.* at ¶ 55 (emphasis added); *see also id.* at ¶¶ 63, 82.

In her view, the "Natural Flavors" label "fails to tell consumers that the Product's taste is not mostly from lemons, but a mix of essences from a variety of fruits and vegetables that are combined in a laboratory, with additives and solvents, into highly concentrated formulas." *Id.* at ¶ 16.

Matthews claims that Polar profited from its "false and misleading representations" about the amount and type of lemon. Polar sold the cans at a "premium price . . . higher than it would be sold for absent the misleading representations and omissions." *Id.* at ¶ 37. She claims that she never would have bought the product if she had known how little lemon was in the seltzer – or at least she would have paid less for it. *Id.* at ¶¶ 65, 67.

According to the complaint, reasonable consumers rely on the manufacturer to describe a product, especially when making a quick decision with a cart full of groceries. "Whether a product contains real lemons or only tastes like lemon is basic front label information consumers rely on when making quick decisions at the store." *Id.* at ¶ 30.

Matthews thinks that she got hoodwinked in the grocery store aisle. She alleges that she had a choice between Polar's seltzer and seltzers that contained "real fruit ingredients." *Id.* at

8

¶ 6. She had to pick between Polar's seltzer and seltzers "which did not misrepresent their attributes, features, and/or components." *Id.* at ¶ 66.

In the future, Matthews hopes to purchase the product again. But she wants assurances that the product's representations are consistent with the fact that there is a *de minimis* amount of lemon in the seltzer. *Id.* at ¶ 68. So, she wants the company to fess up and tell her that it contains less lemon than she expected.

Matthews was so disappointed with her purchase of lemon water that she made a federal case out of it. *See* Cplt. (Dckt. No. 1).

Matthews's complaint contains a six-pack of counts. She claims: (1) a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (2) a violation of comparable statutes from other states; (3) breaches of express and implied warranties of merchantability, and a violation of the Magnuson Moss Warranty Act; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment.[2] *Id.* at ¶¶ 77–119.

Matthew believes that there is a small army of people out there who are stumped by lemon-flavored lemon water. So, she brings this case as a class action, hoping to represent "[a]ll persons in the State of Illinois who purchased the Product during the statute of limitations for each cause of action alleged." *Id.* at ¶ 70. Matthews also seeks to represent a multi-state class of consumers from 19 other states "who purchased the Product during the statutes of limitations for each cause of action alleged."[3] *Id.*

---

[2] Matthews withdrew her breach-of-contract claim. *See* Pl.'s Resp., at 1 n.1 (Dckt. No. 19). Therefore, the Court dismisses Matthews's breach-of-contract claim. *See Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *1 n.1 (N.D. Ill. 2023) (dismissing plaintiff's breach-of-contract claim after it was withdrawn).

[3] Matthews's proposed multi-state class includes consumers from Iowa, Arizona, Ohio, Alabama, Louisiana, West Virginia, New Jersey, Massachusetts, Michigan, Georgia, Utah, Delaware, New Hampshire, Maine, Vermont, Texas, Arkansas, Virginia, and Oklahoma. *See* Cplt., at ¶ 70 (Dckt. No. 1).

Polar moved to dismiss. *See* Def.'s Mtn. to Dismiss (Dckt. No. 17). The complaint gives this Court a decidedly sour taste, too.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Claims of common-law fraud or deceptive practices under the ICFA require the plaintiff to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Rule 9(b) requires a party alleging fraud to "state with particularly the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). The plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *See Vanzant*, 934 F.3d at 738.

## Analysis

Matthews uncorks a wide range of claims about the lemon seltzer water. She invokes the Illinois consumer fraud statute, and comparable statutes from other states. She alleges a breach of express and implied warranties of merchantability, and a violation of the Magnuson Moss

10

Warranty Act. She adds to the tab by alleging tortious negligent misrepresentation, common-law fraud, and unjust enrichment.

All of those claims share something in common. They require a false or misleading statement that deceives a reasonable consumer. And that's where the complaint comes up dry.

## I.  ICFA Claim

The Illinois Consumer Fraud and Deceptive Business Practices Act "broadly prohibit[s] unfair business practices." *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474 (7th Cir. 2020). To state a claim under the ICFA, a plaintiff must allege: (1) a deceptive act or practice, (2) an intent for the consumer to rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage that was (5) proximately caused by the deception. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *see also Sneed v. Ferrero U.S.A., Inc.*, 2023 WL 2019049, at *2 (N.D. Ill. 2023). The statutes in other states share the same basic requirements.[4]

To satisfy the first element, Matthews must plead facts plausibly showing a deceptive act or practice. "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Specifically, Matthews must plausibly allege that the statement was "likely to deceive a reasonable consumer." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020).

---

[4] The complaint alleges that "[t]he Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the [ICFA] and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce." *See* Cplt., at ¶ 84 (Dckt. No. 1). The complaint does not allege any additional information about these state laws. So, the Court assumes that these Acts are substantially similar to the ICFA. *See, e.g., DeMaso v. Walmart Inc.*, 2023 WL 1800208, at *5 n.4 (N.D. Ill. 2023); *Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *2 n.2 (N.D. Ill. 2023); *Jacobs v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 3369273, at *2 (N.D. Ill. 2022).

This standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell*, 982 F.3d at 474–75 (quoting *Beardsall*, 953 F.3d at 972–73); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (explaining that the standard is met by a misrepresentation that "is either (1) literally false, or (2) likely to mislead (either through a statement or material omission) a reasonable consumer") (quotation marks omitted).

Whether a statement is deceptive is often a question of fact. *See Bell*, 982 F.3d at 473. But not always. A case can't get to a jury unless the statement in question could mislead a reasonable consumer. *See Bell*, 982 F.3d at 477; *Bober*, 246 F.3d at 940.

"Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). So, to adequately plead an ICFA claim, it is not enough to allege that the product misled a particular plaintiff. Idiosyncratic readings and unreasonable interpretations of a label don't cut it. What matters is how a reasonable consumer would read the packaging.

Claims cannot rest on "unreasonable or fanciful interpretations of labels or other advertising." *See Bell*, 982 F.3d at 477–78; *see also Bober*, 246 F.3d at 940 (dismissing a claim of deceptive advertising because the product's label "eliminates any possibility of deception" and "can only be read" in a nondeceptive way); *Sneed*, 2023 WL 2019049, at *2 ("Whether a statement is deceptive is usually an issue of fact. However, when a deceptive advertising claim is based on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may be justified.") (cleaned up); *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *12 (N.D. Ill. 2022) ("To determine the likelihood of deception, courts apply a 'reasonable

12

consumer' standard. 'This requires more than a mere possibility that [a] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled.'") (citation omitted; alterations in original) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "It's well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it – and that dismissal is warranted in those circumstances." *Bell*, 982 F.3d at 493 (Kanne, J., concurring).

The Seventh Circuit favors a "practical and fact-intensive approach" when evaluating ICFA claims at the motion-to-dismiss stage. *Id.* at 478 (majority opinion). "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Benson*, 944 F.3d at 646 (alteration in original) (quoting *Davis*, 396 F.3d at 884). But checking common sense at the door isn't required.

In some cases, even a true statement can lead to a claim, if the true statement creates a false impression. *See Bell*, 982 F.3d at 479; *Beardsall*, 953 F.3d at 973 ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false."); *Suchanek*, 764 F.3d at 761–62 (noting that a deceptive-practices claim under the ICFA "may be satisfied by proof that a statement is likely to mislead a reasonable consumer, even if the statement is literally true"). But again, the true statement must create a false impression that would mislead a reasonable consumer. *See Suchanek*, 764 F.3d at 761–62.

Before diving in, it is important to bear in mind what this case *isn't* about. This case doesn't involve a situation where the can says "lemon," and there was no lemon. In fact, the

13

complaint concedes that the lemon seltzer does, in fact, contain real lemon. *See* Cplt., at ¶¶ 55, 59 (Dckt. No. 1); *id.* at ¶ 61 (admitting that the seltzer "contained a negligible amount of lemon"). It is not as if the entire can is full of something brewed and concocted in a lab. Part of it came from a tree.

Instead, the complaint floats a few theories of liability about the lemon that *is* in the can. The first theory is about the amount of lemon. *Id.* at ¶ 2. The second theory is about the type of lemon. *Id.* Neither theory holds any water.

The claim about the amount of lemon fails for a simple reason. Polar did not make any representations about the amount of lemon in each can. So Matthews cannot bring a misrepresentation claim about the amount of lemon in each can. She can't bring a misrepresentation claim about a representation that isn't there.

There is a big difference between saying "lemon" and saying "this product contains X amount of lemon." The former is an attribute, and the latter is an amount. The presence of something is different than the amount of something. It is the difference between "what" and "how much." No reasonable consumer would confuse the two.

A statement about the presence of an ingredient is not a promise about the amount of the ingredient. *See Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *3 (N.D. Ill. 2023) ("Packaging that merely depicts or asserts the presence of an ingredient typically cannot lead a reasonable consumer to conclude that the product contains a certain amount of that ingredient.") (collecting cases). A claim cannot rest on a mere reference to an ingredient that is, in fact, an ingredient unless something else makes that statement misleading.

For example, in *Hamidani*, Judge Coleman dismissed an ICFA claim where the plaintiff alleged that a wheat bread labeled "Brown Bread" misled consumers "about the proportion of

14

whole grains in the Bread's ingredients." *Id.* The claim failed because the bread *did* contain whole grains. *Id.* And "[e]ven if the brown color of the bread signifies that the Bread contained whole grains – which it does – it does not guarantee its precise whole grain content." *Id.*

Likewise, in *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505 (N.D. Ill. 2022), Judge Aspen dismissed an ICFA claim alleging that the labeling on strawberry Pop-Tarts misled consumers. The plaintiff argued that the use of the word "strawberry" – plus the pictures of half a strawberry, and a Pop-Tart with oozing red filling – misled consumers about the amount of strawberries in the pastry. *Id.* at *4. But Strawberry Pop-Tarts do contain strawberries, and the packaging "does not state or suggest anything about the amount of strawberries in the Product's filling or guarantee that the filling contains only strawberries." *Id.* at *5. So, plaintiff's "interpretation of the label [was] unreasonable and unactionable." *Id.*

Other examples abound. In *Smith v. General Mills Sales, Inc.*, 2023 WL 2349908 (N.D. Ill. 2023), Judge Shah dismissed a claim that "reasonable consumers would expect more traditional cheese than imitation cheese" in pizza rolls. *Id.* at *4. In *Karlinski v. Costco Wholesale Corp.*, 2022 WL 2867383 (N.D. Ill. 2022), Judge Norgle dismissed a claim that reasonable consumers would expect "chocolate" to imply that the food would be "made mostly or entirely of cacao bean ingredients." *Id.* at *5. And in *Zahora v. Orgain LLC*, 2021 WL 5140504 (N.D. Ill. 2021), Judge Kendall dismissed a claim that reasonable consumers would expect the phrase "Vanilla Bean Flavor" to mean that the flavor "was derived exclusively or even mostly from vanilla bean." *Id.* at *4.

So too here. Polar simply said "lemon," and the product does contain some lemon. A reasonable consumer would not interpret the word "lemon" as some type of representation about the amount of lemon in the can. *See Zahora*, 2021 WL 5140504, at *4 ("A reasonable consumer

would not read into the label what is simply not there . . . .").  Polar did not make any representations about how much lemon is in each can, so Matthews cannot state a claim about the amount of lemon in each can.  Without a representation, there is no misrepresentation.

In fact, it is hard to see how Matthews could have a claim, even if the seltzer did not contain any real lemon at all.  Lemon is a flavor, and labeling the water as "lemon" tells the consumer what flavor they can expect when they pop open a can.  If you want lime, grab the green case nearby.

A reasonable consumer understands when packaging conveys a flavor.  In *DeMaso v. Walmart Inc.*, 2023 WL 1800208 (N.D. Ill. 2023), Judge Rowland dismissed an ICFA claim that it was deceptive to label cookies as "mint."  The cookies did not contain mint.  *Id.* at *4.  Instead, the cookies had a "mint flavor" that came from "natural and artificial ingredients."  *Id.*

Judge Rowland dismissed the claim because "the product promises a flavor," not an ingredient.  *Id.*  Plaintiff's reading of the label was unreasonable because consumers associate mint with a flavor, not an ingredient.  *Id.*  Consumers don't expect remnants of leafy plants in cookies.

Consumers know the difference between lemon water and lemon juice.  A reasonable consumer expects that lemon bubble water is water that tastes like lemon.  It's lemon-flavored water.  At its core, the product is water, not lemon juice.  A reasonable consumer would not expect to pucker after taking a big swig.

Matthews does not fare any better with her second theory of liability, about the "type of lemon ingredients."  *See* Cplt., at ¶ 2 (Dckt. No. 1).  She faults the company for taking the goodness from real lemons – "extractives, oils, and essences" – and then putting them through a manufacturing process "to create lemon flavor."  *Id.* at ¶ 10.

16

That's not a claim, either. Polar never said anything about how it created the lemon flavor that pops out of the can. And reasonable consumers expect food manufacturers to put food through a manufacturing process. If you don't want that process, buy a real lemon.

Along the way, Matthews seems disappointed by the fact that the lemon-flavored seltzer water didn't have much "nutritive value." *See* Cplt., at ¶¶ 9–10, 55, 57, 59, 63, 79 (Dckt. No. 1). That's neither here nor there. The labeling did not make any representations about the nutritional value of the lemon seltzer water.

And in any event, no reasonable consumer could think that lemon seltzer water had nutritional value. Drinking a bowl of lemon seltzer water the size of Lake Michigan would not prevent anyone from getting scurvy. Water is great for providing hydration, but isn't so great for providing nutrition. If Plaintiff wants the nutritional value of lemon juice, then she can drink lemon juice. But lemon juice, like the complaint, is tough to choke down.

In the end, the complaint fails because it is attempting to put words into the manufacturer's mouth. Consumers cannot impose content that isn't there, and impute meaning that is not fairly derived from the labeling itself. That's another way of saying that an interpretation of the packaging must be reasonable – the focus is on the interpretation by a reasonable consumer. A plaintiff cannot sue based on every fanciful idea that springs to mind after reading the label.

Imagine, for example, if a can of carbonated water simply said "water," with a picture of a glacier-covered mountain. A consumer could not bring a claim that he or she expected that the water would come from a natural spring, or that the water came from a particular soft-flowing mountain stream in a majestic alpine peak in the French Alps. The can simply says "water," so if the can contains water, the consumer is out of luck (unless he or she is thirsty).

17

Words have meaning, and the ability to stretch the meaning of words has its limits. They do not have infinite pliability. Words create mischief if they're stretched too far. Words don't mean whatever we want them to mean. *See* Lewis Carroll, *Through the Looking Glass* (1871) ("'When I use a word,' Humpty Dumpty said, in a rather scornful tone, 'it means just what I choose it to mean – neither more nor less.' 'The question is,' said Alice, 'whether you can make words mean so many different things.' 'The question is,' said Humpty Dumpty, 'which is to be master – that's all.'").

## II.     Remaining Claims

The complaint does not sufficiently allege that a reasonable consumer would be misled by the product's labeling. That failure is a kill shot to the Achilles Heel of the entire case. The remaining claims share the same vulnerability. So the Court dismisses them, too.

Plaintiff also brings state law claims about express and implied warranties of merchantability, a warranty claim under the Magnuson Moss Warranty Act, tortious negligent misrepresentation, common-law fraud, and unjust enrichment. Those claims depend on the allegation that the seltzer's labeling is false, deceptive, or misleading.[5]

The Court begins with the warranty claims. An express warranty claim requires that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part

---

[5] *See* Cplt., at ¶ 96 (Dckt. No. 1) (alleging that the warranty claims are based on "Defendant's representations . . . that the Product contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons"); *id.* at ¶ 112 (alleging that the negligent misrepresentation claim is based on Defendant's representations about the product which "took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant"); *id.* at ¶ 115 (alleging that the common-law fraud claim is based on Defendant's representation that the product "contained a non-negligible amount of lemon ingredients, instead of a de minimis or negligible amount, such as isolated lemon compounds, which failed to provide the nutritive value and taste of lemons"); *id.* at ¶ 119 (alleging that the unjust enrichment claim is based on Defendant obtaining "benefits and monies because the Product was not as represented and expected").

of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). A breach of the implied warranty of merchantability occurs if the product is not "fit for the ordinary purposes for which such goods are used." *See* 810 ILCS 5/2-314(2)(c). A "consumer's ability to state a claim under the [Magnuson Moss Warranty] Act 'is dependent on the existence of an underlying viable state-law warranty claim.'" *See Lederman v. Hershey Co.*, 2022 WL 3573034, at *6 (N.D. Ill. 2022) (quoting *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. 2016)).

The Court's holding that the complaint's allegations are not enough to show that a reasonable consumer would be misled under the ICFA applies to Matthews's warranty claims, too. *See DeMaso*, 2023 WL 1800208, at *5 (explaining that the conclusion that the product's labeling was not false, misleading, or deceptive as a matter of law was also fatal to the claims for breach of express and implied warranties); *Sneed*, 2023 WL 2019049, at *4 ("[T]he fact that she has not alleged that Ferrero U.S.A., Inc. made any kind of promise that it did not fulfill dooms her claims, whether she is claiming breach of an implied warranty as defined by state law or an express warranty as defined by [the Magnuson Moss Warranty Act]."); *Zahora*, 2021 WL 5140504, at *5 (collecting cases); *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *6 (N.D. Ill. 2022). And without a viable state-law claim, her claim under the Magnuson Moss Warranty Act also fails. *See Lederman*, 2022 WL 3573034, at *6.

The negligent misrepresentation claim suffers from the same problem. A negligent misrepresentation claim requires the plaintiff to plead and prove: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of

the statements; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006). So, without a false or deceptive statement, this claim also fails. *See Sneed*, 2023 WL 2019049, at *5.

It is the same story for the common-law fraud claim. The claim requires a plaintiff to plead and prove that: (1) the defendant made a false statement of material fact, (2) the defendant knew that the statement was false, (3) the defendant intended that the statement induce the plaintiff to act, (4) the plaintiff did act in reliance on the statement, and (5) the plaintiff was damaged from her reliance on the statement. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). Again, without a false or deceptive statement, this claim can go nowhere. *See Hamidani*, 2023 WL 167513, at *3; *see also Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *2 (N.D. Ill. 2022) ("The elements of a common-law fraudulent misrepresentation claim largely overlap with a deceptive-practices claim under the ICFA, and include 'a false statement of material fact.'") (footnote omitted) (quoting *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018)).

Finally, "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *Vanzant*, 934 F.3d at 739–40 (quotation marks omitted). "Rather, it's a condition brought about by fraud or other unlawful conduct." *Id.*

So, "[b]ecause all of Plaintiff's other claims fail, so too does her unjust enrichment claim." *Lederman*, 2022 WL 3573034, at *7; *see also Sneed*, 2023 WL 2019049, at *6; *Cerretti*, 2022 WL 1062793, at *7.

In sum, because Matthews has not sufficiently alleged that a reasonable consumer would be misled by the seltzer's labeling, the remaining claims must be dismissed.

20

As an aside, the complaint faced a number of other daunting hurdles, too, above and beyond the failure to plead a false or misleading statement. For example, to bring an express warranty claim under Illinois law, the buyer must give pre-suit notice to the seller. *See* 810 ILCS 5/2-607(3)(a) ("Where a tender has been accepted, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); *see also Sneed*, 2023 WL 2019049, at *4 (dismissing a warranty claim for failure to give "pre-suit notice"). Matthews admits that the only notice she gave Polar was "by filing this action in February 2022." *See* Pl.'s Resp., at 10 (Dckt. No. 19). So, she has not met the pre-suit notice requirement.

Matthews's implied warranty claim faces other issues, too. Under Illinois law, an implied warranty claim "give[s] a buyer of goods a potential cause of action *only against his immediate seller*." *Sneed*, 2023 WL 2019049, at *4 (emphasis in original) (quoting *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988)). But here, Matthews did not purchase the seltzer from Defendant. She purchased the seltzer from a local grocery store. *See* Cplt., at ¶ 54 (Dckt. No. 1).

Matthews contends that her purchase falls under an exception to the privity requirement for manufacturers who are in a direct relationship with the seller. *See* Pl.'s Resp., at 11 (Dckt. No. 19). The Court has its doubts about whether the complaint sufficiently pleads this relationship. *See* Cplt., at ¶¶ 92–107 (Dckt. No. 1). So, even if Plaintiff could overcome the lack of a false or misleading statement, this issue continues to lurk in the background.

Finally, Matthews's negligent misrepresentation claim appears to run headlong into the economic loss doctrine. Decades ago, the Illinois Supreme Court held that plaintiffs cannot recover for a "solely economic loss" in an action for strict liability or negligence. *See Moorman*

21

*Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449–50 (Ill. 1982). Simply put, under Illinois law, "one cannot obtain purely economic damages in an action sounding in negligence or strict liability in tort." *Jett8 Airlines, PL v. Gen. Elec. Co.*, 2014 WL 5488054, at *2 (Ill. App. Ct. 2014).

Here, Matthews alleges only an economic injury, which is not compensable under the economic loss doctrine. Matthews does not allege that she suffered physical injury from the seltzer. *See, e.g.*, Cplt., at ¶ 65 (Dckt. No. 1) ("Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it."). And it is not clear how she could. Water doesn't hurt you if it's light on lemon. *See, e.g.*, *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1164 (N.D. Ill. 2022) (dismissing a negligent misrepresentation claim based on deceptive labeling on economic loss doctrine grounds); *Sneed*, 2023 WL 2019049, at *5 (same); *Hamidani*, 2023 WL 167513, at *4 (same); *Karlinski v. Costco Wholesale Corp.*, 2022 WL 2867383, at *8 (N.D. Ill. 2022) (same).

## III.    Injunctive Relief

Finally, Polar argues that Matthews lacks standing to seek injunctive relief. *See* Def.'s Mem. in Support of Mtn. to Dismiss, at 25–26 (Dckt. No. 17-1). But because the complaint has failed to state a claim, the Court does not need to address this argument. *See, e.g.*, *Sneed*, 2023 WL 2019049, at *6; *Lederman*, 2022 WL 3573034, at *7; *Karlinski*, 2022 WL 2867383, at *10. Without any viable claim for relief, "there are no claims for which [Matthews] can seek injunctive relief as a remedy." *Chiappetta*, 2022 WL 602505, at *9.

## Conclusion

For the foregoing reasons, Polar's motion to dismiss the complaint is granted.

Date:  March 22, 2023

_____

Steven C. Seeger
United States District Judge